IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
November 7, 2000 Session

## GEORGE MILTON BROOKS v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dyer County**
**No. C97-169     Lee Moore, Judge**

**No. W2000-00214-CCA-R3-PC  - Filed March 22, 2001**

The petitioner, George Milton Brooks, appeals as of right from the Dyer County Circuit Court's denial of his petition for post-conviction relief.  Petitioner contends that he received ineffective assistance of counsel during his pre-trial proceedings when counsel: (1) failed to investigate all apparent substantial defenses on Petitioner's behalf; (2) failed to assert certain Fourth Amendment violations during the hearing on Petitioner's motion to suppress; and (3) incorrectly advised Petitioner whether he could properly reserve two questions of law for appellate review.  After a review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Anthony L. Winchester, Dyersburg, Tennessee, for the appellant, George Milton Brooks.

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

# I. Background

The facts leading to the underlying conviction are taken from a review of this Court's opinion in the direct appeal. See State v. George Milton Brooks, No. 02C01-9804-CC-00116, 1998 WL 775649, Dyer County (Tenn. Crim. App., Jackson, Nov. 6, 1998), perm. to appeal denied (Tenn. 1999). On June 11, 1997, Dyersburg police were notified that a child who had been admitted to a local hospital had reported a sexual assault. The twelve-year-old victim told the investigating police officer that she had been raped by her stepfather, the petitioner, earlier that day. Police officers proceeded to Petitioner's residence and immediately advised Petitioner of his Miranda rights. Petitioner attempted to talk to the officers but they advised him to wait. Petitioner was then transported to the county jail. During an interview later that afternoon, Petitioner was again advised of his Miranda rights, after which he gave an incriminating statement to the police officers.

On August 11, 1997, Petitioner was indicted by the Dyer County Grand Jury for rape of a child, Tenn. Code Ann. § 39-13-522, a Class A felony. The charge resulted from the allegations made by Petitioner's stepdaughter that he sexually assaulted her and the incriminating statements made by Petitioner to police officers during the subsequent investigation. Petitioner filed a motion to suppress his incriminating statements and a motion to introduce the prior sexual activity of the victim into evidence under Tenn. R. Evid. 412 . After the trial court denied both motions, Petitioner pled guilty, attempting to reserve the issues contained in his denied motions as certified questions of law for appeal under Tenn. R. Crim. P. 37(b)(2)(iii). On December 9, 1997 the trial court imposed a sentence of fifteen years, the minimum in the range, pursuant to Petitioner's plea agreement.

Petitioner's sole issues on direct appeal were the two certified questions of law Petitioner attempted to reserve under Tenn. R. Crim. P. 37(b)(2)(iii) in his plea agreement, i.e., that the trial court erred when it denied his motions (1) to suppress incriminating statements made by Petitioner to police and (2) to introduce evidence concerning prior sexual activity of the victim pursuant to Tenn. R. Evid. 412. After reviewing the record, this Court determined that Rule 37(b)(2)(iii) was not the proper vehicle under which an appeal may lie for the types of errors claimed by Petitioner. Brooks, 1998 WL 775649 at *3. Provision (iii) applies in cases where the record clearly reflects an invalidating error, such as the denial of the right to counsel or conviction under an invalid statute, and the error is apparent upon the face of the existing record. However, since the record on Petitioner's appeal reflected unanimous agreement by the District Attorney, the Petitioner, and the trial court that Petitioner pled guilty conditioned upon his right to appeal the certified questions in issue, this Court agreed to examine Petitioner's claims to determine whether they could be addressed on the merits under Rule 37(b)(2)(i).

On November 6, 1998, our Court dismissed Petitioner's appeal for lack of jurisdiction because the questions of law were not properly reserved under Rule 37(b)(2)(i) and the mandatory requirements set forth in Preston. See Tenn. R. Crim. P. 37(b)(2)(i); State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). Under Rule 37(b)(2)(i), the final order of judgment must contain a statement of the dispositive certified question of law reserved by the defendant, wherein the question is clearly

stated so as to identify the scope and the limits of the legal issues reserved. See Preston, 759 S.W.2d at 650; see also State v. Pendergrass, 937 S.W.2d 834 (Tenn. 1996). The order must also state that the certified question was expressly reserved as a part of the plea agreement, that the State and the trial judge consented to the reservation, and that the State and the trial judge are of the opinion that the question is dispositive of the case. Preston, 759 S.W.2d at 650. Petitioner failed to comply with these requirements. We concluded that even if this Court ignored the technical omissions, the certified questions in Petitioner's appeal were nevertheless not dispositive of the case as required under Rule 37(b)(2)(i). However, we further concluded in footnotes that the trial court properly denied Petitioner's motions. See Brooks, 1998 WL 775649 at *4 nn.3-4. Regarding Petitioner's motion to suppress, we stated that there was no dispute that Petitioner voluntarily agreed to provide a statement to the police and that, in fact, he anxiously attempted to explain his side of the story to the officers when they first arrived. As for Petitioner's Rule 412 issue, we found that Rule 412 was applicable to cases involving rape of a child but Petitioner failed to comply with the procedural requirements for admission of evidence under said rule.

Thereafter Petitioner filed a petition for post-conviction relief wherein he alleged ineffective assistance of counsel on three grounds: (1) counsel failed to adequately investigate the facts and defenses in Petitioner's case; (2) counsel failed to raise numerous Fourth Amendment violations in support of his motion to suppress; and (3) counsel erroneously advised Petitioner that he could properly reserve two questions of law for appeal which would grant him relief, with the appeal being the reason for Petitioner's guilty plea. At the conclusion of an evidentiary hearing, the post-conviction court denied Petitioner any relief.

## II. Post-conviction Hearing

The post-conviction hearing occurred on December 6, 1999. Petitioner's proof consisted solely of his testimony. The State's proof consisted of testimony from the two attorneys who were appointed to assist Petitioner. Petitioner's first attorney, Steve Davis, was replaced upon Petitioner's request just prior to the hearing on his motion to suppress. Petitioner's second attorney, Tod Taylor, represented him throughout the preliminary hearings and plea negotiations. Petitioner alleged that both attorneys rendered ineffective assistance of counsel.

At the post-conviction hearing, Petitioner testified that he was watching television the day that the police officers came to his home and arrested him. Petitioner testified that the police officers knocked on his door and when Petitioner answered, they entered, handcuffed him, and placed him in the back of a police car. The police did not show Petitioner an arrest warrant when they entered his home. The police officers transported Petitioner to the Dyer County Jail where he was held in maximum security for an hour and a half. Petitioner claimed that during this time, he was not allowed to contact clergy, family, or friends. Next, the police officers interrogated Petitioner at which time Petitioner gave an incriminating statement which they used later in their affidavit for an arrest warrant. Petitioner claimed that the above facts demanded suppression of Petitioner's incriminating statement under the Fourth Amendment because the police arrested him without probable cause, a warrant, or the presence of exigent circumstances.

Petitioner testified that both attorneys, Davis and Taylor, rendered ineffective assistance by failing to adequately investigate the facts and defenses relevant to Petitioner's case and, further, that Taylor was ineffective for failing to raise certain issues in his motion to suppress. Petitioner testified that when he initially met with Davis, the first attorney appointed to assist him, Davis explained the charge to him and they discussed the fact that Petitioner had given the police an incriminating statement. Davis also told Petitioner that he had planned to contact Petitioner's wife. At their second meeting, Davis advised Petitioner that Petitioner's wife would neither speak with him nor allow Davis to speak with her daughter, the victim. Davis also informed Petitioner that the District Attorney would not agree to a plea agreement wherein Petitioner was allowed to serve less than fifteen years and that, if Petitioner went to trial, he could receive a sentence as long as twenty-five years. During Petitioner's third meeting, Davis informed Petitioner that he planned to file a motion to suppress Petitioner's statement to police. At some point during Petitioner's representation by Davis, Petitioner asked Davis to obtain a copy of the victim's statement and to locate witnesses that would testify in his behalf, but Davis never complied with these requests. Petitioner claimed that Davis looked nervous and perspired a lot during their meetings and, further, that Davis became loud, angry, and defensive with Petitioner when Petitioner asked him questions regarding trial strategy.

Petitioner testified that when the date for the hearing on the motion to suppress arrived, Petitioner requested that the court appoint new counsel to assist him. Petitioner was dissatisfied because Davis had not determined a defense strategy, had not discussed with Petitioner what witnesses he planned to call, and had not revealed what issues were involved in Petitioner's motion to suppress. Petitioner claimed that Davis seemed concerned only with the facts that the District Attorney would not consider a sentence less than fifteen years and that, if the victim testified, Petitioner's sentence upon conviction would likely be twenty to twenty-five years.

The court granted Petitioner's request, appointing Tod Taylor to assist Petitioner. Taylor rescheduled the motion to suppress hearing at which he later argued that Petitioner's statement to police violated Petitioner's Fifth and Sixth Amendment rights. Petitioner testified that, in his opinion, Taylor should have argued that his detention, interrogation, and arrest were illegal. Petitioner testified that Taylor also requested a hearing to present a Rule 412 motion, but the court denied this request. Afterward, Petitioner and Taylor discussed his remaining two choices: (1) negotiate a plea agreement or (2) go to trial. With no plausible defense, Taylor advised Petitioner to plead guilty and, afterward, appeal the trial court's denial of his suppression and Rule 412 motions. Because Petitioner believed that the Court of Criminal Appeals would grant him relief, Petitioner pled guilty. Petitioner testified that, at this time, he was unaware that the victim's medical examination showed no evidence of penetration. Petitioner testified that if he had known this, he would have opted to go to trial.

During cross-examination, Petitioner admitted that he was given a "full blown" hearing on his motion to suppress, at which Petitioner and the police officers testified as to the facts and circumstances surrounding his arrest. Petitioner further testified that he and Davis had discussed the following: the elements of the charges against him, Petitioner's confession, the range of punishment, the fact that Petitioner's wife would not cooperate with his defense, the offer made by the State, the

possibility of undergoing a mental evaluation to evaluate a possible defense, and whether they could have his confession suppressed. Petitioner felt that Davis should have sought witnesses to testify in his behalf. Petitioner wanted his friends and employers to testify regarding his credibility, since none of them could have testified as to the facts. He also wanted witnesses to testify concerning his wife's and the victim's lack of credibility. Petitioner admitted that he did not supply either of his attorneys with any names of potential witnesses who could have testified regarding these matters. Petitioner further conceded that Taylor did what he could to obtain a hearing on the Rule 412 motion, but Petitioner had misunderstood what was to take place. Petitioner also acknowledged that he misunderstood Taylor's advice regarding a possible appeal. When Taylor explained to him that he could plead guilty reserving the suppression and Rule 412 issues as certified questions for appeal, Petitioner believed that pleading guilty was the only way that he would be able to obtain appellate relief.

Steve Davis testified that he was the first attorney appointed to represent Petitioner. Davis testified that he discussed with Petitioner the elements of the charge against him and the fact that Petitioner had confessed. Davis also talked with Petitioner about possible defenses, but the two of them were unable to come up with anything. Davis believed that the evidence–Petitioner's confession in conjunction with the testimony of the victim–would likely result in his conviction and a sentence of at least twenty years. Davis tried to contact Petitioner's wife and her daughter, the victim, but they were both adamant about fully prosecuting Petitioner and refused to speak to Davis. Davis filed a motion to suppress Petitioner's confession in case they went to trial. In Davis' opinion, however, Petitioner's confession was legal, constitutional, and admissible. Given the facts in Petitioner's case, Davis found no basis to raise a Fourth Amendment issue in the motion to suppress or to put on witnesses to testify regarding Petitioner's credibility. Davis considered Petitioner's credibility irrelevant. Davis also testified that he did not recall Petitioner bringing up the issue of illegal arrest or any other Fourth Amendment concerns during their conversations.

During cross-examination, Davis denied having substance abuse problems in 1997. Davis admitted to a conviction for driving under the influence, but did not recall the date of the offense. Davis testified that he received a private reprimand from the Board of Professional Responsibility. As part of the terms of the reprimand, Davis was required to attend "AA" meetings and receive treatment, but he did not comply. Consequently, his license to practice law was suspended for thirty days.

Tod Taylor, Petitioner's second attorney, testified that he recalled discussing Petitioner's defense with him. Specifically, they talked about the arrest warrant, whether Petitioner had an argument under the Sixth Amendment right to counsel, whether Petitioner waived his Miranda rights, Petitioner's statement to the police, and the general circumstances surrounding his arrest. After these discussions, Taylor learned nothing from Petitioner that raised a Fourth Amendment issue. Taylor testified that during the hearing on Petitioner's motion to suppress, Petitioner and the officers testified regarding how they came to be at his home and the circumstances under which Petitioner was transported to the jail. The trial court also heard testimony regarding the time the

warrant was actually issued and served. (Further elaboration concerning the substance of the testimony given at the suppression hearing was not reflected in the appellate record.)

Taylor further testified that he filed a motion requesting the victim's medical records if the State was intending to use them as evidence at trial. The medical records contained the results of a physical examination performed on the victim after the rape. Specifically, the examination revealed a white mucoid substance present in the victim's vagina, which corroborated part of Petitioner's statement, i.e., Petitioner used Vaseline to digitally penetrate the victim. The medical records also showed ejaculatory semen present outside but near the vaginal area. When Taylor discovered the prosecutor was not planning to introduce the medical records at trial, Taylor dropped his request in an effort to "let sleeping dogs lie" because, clearly, this evidence could damage Petitioner's case. Taylor and Petitioner also discussed whether they should file a Rule 412 motion to introduce evidence of the victim's prior sexual activity. However, the court denied Petitioner a hearing on the motion because rape of a child was not included in the "preamble" of Rule 412.

After the court denied Petitioner's Rule 412 and suppression motions, Taylor and Petitioner discussed which, if any, defense strategies remained. Taylor testified that his first inclination was to lock in the fifteen-year sentence with a plea agreement and appeal the trial court's denial of the aforementioned motions. Taylor admitted that he knew the motion issues were not dispositive of Petitioner's case at the time they discussed the appeal. Taylor had already informed Petitioner that, if he went to trial, his chances of success were slim. The testimony of the young victim would be highly prejudicial, and the nature of the crime would be distasteful to the jury. He believed that Petitioner would likely be convicted and receive a sentence longer than fifteen years. Regarding the issue of Petitioner's credibility, Taylor testified that the matter was a double-edged sword because building Petitioner's credibility would have given his confession more weight.

Taylor further testified that, after the Court of Criminal Appeals dismissed Petitioner's appeal, Taylor contacted an "appellate specialist" for advice on how to proceed. Taylor wanted to file a motion to withdraw Petitioner's guilty plea. Taylor had discovered case law in which the Court of Criminal Appeals allowed a defendant to withdraw his guilty plea under circumstances very similar to Petitioner's. The consulting lawyer agreed with Taylor's strategy. Taylor approached Petitioner with this plan and explained that, if they were successful, Petitioner would be granted the right to proceed to trial. Petitioner told Taylor he wanted to think about it. After a few days, Petitioner called Taylor and directed him to go ahead with an appeal to the Tennessee Supreme Court. Petitioner told Taylor that he did not want to withdraw his plea and go to trial.

During cross-examination, Taylor testified that the medical records may have had exculpatory information, but he chose not to request them as a tactical matter. The records also contained incriminating information. Additionally, Taylor admitted that he did not consider using any witnesses, that he did not argue Fourth Amendment violations in his motion to suppress, and that he did inform Petitioner that it was possible to reserve two certified questions of law for appeal which, if they obtained a favorable ruling, would "level the playing field" for subsequent

negotiations and at the trial stage. On redirect, Taylor testified that he never told Petitioner that the issues sought to be reserved were dispositive of his case.

At the conclusion of the evidentiary hearing, the post conviction court made the following findings and conclusions: (1) issues concerning the police officers' seizure of Petitioner and his subsequent interrogation, as well as other related Fourth Amendment issues, were addressed at the suppression hearing and were, at worse, a question of tactics or strategy on the part of counsel such that not raising the issues during a motion to suppress did not constitute ineffective assistance of counsel; (2) regarding counsel's failure to investigate, no witnesses existed other than those who would testify as to credibility which a decision to omit is tactical and a matter of defense strategy; (3) the lack of witnesses to testify as to credibility on the part of the victim and/or Petitioner would have had little, if any, effect on the outcome of trial and, therefore, no showing of prejudice to Petitioner was made; (4) the medical records did not constitute exculpatory evidence; (5) even if failing to request medical records did comprise ineffective assistance, there was no prejudice to Petitioner since the records could have been just as harmful as helpful and, therefore, constituted a tactical decision on the part of counsel; (6) the Rule 412 motion was denied because the issues were inapplicable or not relevant and counsel was not ineffective in handling this matter; (7) counsel's mistake in informing Petitioner that it was possible to reserve nondispositive questions for appeal did not constitute ineffective assistance where the Court of Criminal Appeals, in dicta, found that the trial court's denial of the motions was not improper and also Taylor attempted to correct his mistake but was prevented from doing so by Petitioner; and (8) in the event that counsel's mistake regarding Petitioner's appeal was ineffective assistance, Petitioner had nevertheless failed to show prejudice as a result of it.

Petitioner now appeals as of right the dismissal of his post-conviction petition by the Dyer County Circuit Court, renewing his claims of ineffective assistance wherein defense counsel (1) failed to adequately investigate Petitioner's case; (2) failed to argue Fourth Amendment violations in his motion to suppress; and (3) erroneously advised Petitioner that Petitioner could reserve two questions of law for appeal which could grant him relief, with the appeal being the foundation for Petitioner's guilty plea. After a thorough review of the record, we affirm the judgment of the trial court.

## III. Analysis

In order to obtain post-conviction relief a petitioner must allege that his conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-203 (1997). If granted an evidentiary hearing, the petitioner has the burden of proving the allegations by clear and convincing evidence. Id. § 40-30-210(f). The trial judge's findings of fact in a post-conviction proceeding are afforded the weight of a jury verdict. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Consequently, this Court is bound by the trial judge's findings of fact unless we conclude that the evidence preponderates against the judgment entered by the post-conviction court. Caruthers v. State, 814 S.W.2d 64, 67 (Tenn. Crim. App. 1991).

Our examination of the post-conviction Court's decision is constrained by three fundamental rules of appellate review. First, this Court cannot reweigh or reevaluate the evidence. Nor may this Court substitute its inferences for those drawn by the trial judge. Black, 794 S.W.2d at 755. Second, any questions regarding the credibility of the witnesses, the weight and value to be given to their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. Id. Third, Petitioner bears the burden of proof, and must show why the evidence in the record preponderates against the judgment entered by the post-conviction court. Id.

The above standards are modified when the claim for relief is ineffective assistance of counsel. In State v. Burns our supreme court held that a claim of ineffective assistance of counsel raised on direct appeal is a mixed question of law and fact, and thus is subject to a de novo review. State v. Burns, 6 S.W.3d 453, 461 (Tenn.1999); see Jhiel Fields v. State, _____ S.W.3d _____, No. E1999-00915-SC-R11-PC, 2001 WL 166380, (Tenn. Feb. 20, 2001). The de novo review of a trial court's factual findings by an appellate court are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is contrary to the trial court's findings of fact. Fields, ___ S.W.3d at ___; see also Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). Furthermore, in reviewing the trial court's application of law to its factual findings "to determine whether counsel's performance was deficient or whether the defendant was prejudiced by that deficiency, appellate courts should conduct a purely de novo review, according to the trial court's conclusions of law no deference or presumption of correctness." Id. at ___. Lastly, a defendant alleging ineffective assistance of counsel must prove the *allegations of fact* underlying his claim by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997); Fields, ___ S.W.3d at ___. This standard of proof is required regardless of whether a petitioner is bringing the claim in a direct appeal or a post-conviction petition. See Burns, 6 S.W.3d at 461 n.5.

In determining whether counsel provided effective assistance, this Court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To prevail on a claim that his counsel was ineffective, a petitioner bears the burden of proving two elements. First, he must prove his counsel made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). This element is proved by showing that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688. Second, the petitioner must prove that he was prejudiced by his counsel's unprofessional errors, such that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694; Butler v. State, 789 S.W.2d 898, 900 (Tenn. 1990).

When reviewing a defense attorney's actions, this Court may not use "20-20" hindsight to second-guess counsel's decisions regarding trial strategy and tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Counsel's alleged errors should be judged at the time they were made in light of all the facts and circumstances. Strickland, 466 U.S. at 690; Cooper, 849 S.W.2d at 746.

### A. Failure to Investigate

Petitioner first alleges that counsel failed to adequately investigate Petitioner's case. Specifically, Petitioner contends that both Davis and Taylor were ineffective for (1) failing to procure witnesses for the purpose of preparing a defense, (2) failing to obtain medical records pertaining to the victim's medical examination, and (3) failing to secure the victim's statement to the police.

Concerning the procurement of witnesses, both Davis and Taylor testified that character witnesses would not have been useful to Petitioner's case. As a tactical decision, Taylor had determined that credibility witnesses could be just as harmful as helpful. Therefore, he chose not to pursue this avenue of defense. The record indicates that no witnesses other than those who would testify as to Petitioner's character existed–no one had knowledge of the actual incident save Petitioner and the victim. Finally, the record reveals that Petitioner made no effort to present witnesses at the post-conviction hearing to demonstrate the importance of their testimony to the court. Hence, Petitioner has not shown how he was prejudiced by the alleged deficiency. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The post-conviction court found that counsel's decision to forgo witnesses was a tactical matter pertaining to defense strategy and, further, that the lack of witnesses would have little, if any, effect on the outcome of trial. We agree. Even if Petitioner was able to establish that his counsel was deficient in investigation of facts or known witnesses (which he did not), he is not entitled to relief on this ground unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of the defense if called. Id. at 758. Petitioner did not present the post-conviction court with the above and, therefore, failed to establish the prejudice requirement mandated by Strickland v. Washington.

The second prong of Petitioner's claim that counsel failed to adequately investigate his case alleges that counsel was ineffective for failing to obtain medical records pertaining to the victim's medical examination. Petitioner claimed that the medical report contained exculpatory evidence or, more specifically, that the report contained no evidence of penetration. The record shows that the medical report revealed a white mucoid substance which corroborated a portion of Petitioner's confession. According to Taylor's testimony, it was for this reason that he decided to "let sleeping dogs lie" and purposefully dropped his pursuit of this evidence. In light of the contents of the report, counsel's hesitation to introduce such potentially damaging evidence at trial is understandable.

The post-conviction court concluded that the medical records did not constitute exculpatory evidence and, also, that the decision not to follow through with a request of the records constituted a tactical decision on the part of counsel. We agree. Moreover, when reviewing a defense attorney's actions, this Court may not use "20-20" hindsight to second-guess counsel's decisions regarding trial strategy and tactics. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The post-conviction court further found that, even if this decision did comprise ineffective assistance, there was no prejudice

to Petitioner since the records could easily have been just as detrimental as helpful to Petitioner's case. We find no fault in this judgment.

Petitioner's last contention, that trial counsel was ineffective because he did not obtain the victim's statement to police, also fails to afford Petitioner any relief. In general, Tennessee's rules of criminal procedure do not provide for pretrial discovery of the opposing party's witnesses' statements. Exceptions exist; however, they do not assist Petitioner. Tennessee Rule of Criminal Procedure 26.2 is controlling in this matter and requires disclosure of a witness' statement only after the witness has testified on direct examination during trial or pretrial hearings. See Tenn. R. Crim. P. 26.2(a), (f). Neither of these circumstances applies to Petitioner's case.

### B. Motion to Suppress

Petitioner also argues that counsel was ineffective for failing to allege violations of Petitioner's Fourth Amendment rights in his motion to suppress Petitioner's incriminating statement to police. At the post-conviction hearing, attorney Davis testified that, in his opinion, Petitioner's confession was legal, constitutional and admissible. Attorney Taylor similarly testified that nothing he learned from Petitioner during their discussions caused him to believe that a Fourth Amendment issue existed. After hearing the testimony of witnesses at the evidentiary hearing and considering the prior testimony at the suppression hearing, the trial court stated in a written order denying post-conviction relief that there were no Fourth Amendment violations to be raised in Petitioner's case. The trial court further found that the omission of a Fourth Amendment argument was, at worse, a question of tactics or strategy on the part of counsel and that Petitioner failed to prove ineffective assistance.

After a review of the record, we find that the post-conviction court obviously credited the testimony of Petitioner's two attorneys that the facts and circumstances in Petitioner's case simply did not raise a Fourth Amendment issue. Because we do not revisit the issue of credibility on appeal, we defer to the trial court's ruling in that regard. Black, 794 S.W.2d at 755. In sum, Petitioner has failed to show ineffective assistance of counsel.

### C. Certified Questions for Appeal

Petitioner's last issue alleges that counsel was ineffective for erroneously advising Petitioner that he could properly reserve two questions of law for appeal which could grant Petitioner relief, when the appeal was the reason for Petitioner's guilty plea. Petitioner alleges that, but for counsel's error, he would not have pled guilty.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made in the context of a guilty plea, the burden is upon the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of there being a reasonable probability that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 464 U.S. 52, 59, 106 S.Ct. 366, 370 (1985). This

standard has also been applied to cases involving Article I, Section 9 of the Tennessee Constitution. See Shazel v. State, 966 S.W.2d 414, 416 (Tenn. 1998).

Rule 37(b) of the Tennessee Rules of Criminal Procedure controls when an appeal lies and provides, in pertinent part, as follows:

> (b) An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction:
>
> (2) Upon a plea of guilty or nolo contendere if:
>
> (i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case . . . .

In State v. Preston, 759 S.W.2d 647 (Tenn. 1988), the Tennessee Supreme Court explained the requirements of Rule 37(b):

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the *dispositive* certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved . . . . Also, the order must state that the certified question was expressly reserved as part of the plea agreement . . . [and] that the State and the judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

Id. at 650 (emphasis added); see also State v. Pendergrass, 937 S.W.2d 834 (Tenn. 1996).

Contrary to the explicit and unambiguous requirements of Rule 37(b)(2)(i) and Preston, Taylor gave Petitioner erroneous information when he advised Petitioner that he could properly reserve for appeal the issues in his motions. Taylor admitted in his testimony during the post-conviction hearing that he was aware prior to advising Petitioner that the questions of law he sought to appeal were not dispositive of the case.

After the evidentiary hearing, the post-conviction court found that Taylor's error regarding Petitioner's appeal did not constitute ineffective assistance. In support of this decision, the post-conviction court relied upon dicta from this Court's decision dismissing Petitioner's appeal wherein we stated in a footnote that the trial court's denial of Petitioner's motion to suppress was not improper. The post-conviction court also relied on Taylor's testimony that he attempted to correct his mistake but was prevented from doing so by Petitioner. Taylor testified that he had approached Petitioner with plans to withdraw Petitioner's guilty plea based on State v. Wilkes, 684 S.W.2d 663 (Tenn. Crim. App. 1984), but Petitioner declined to pursue this option. As a result, Taylor continued with their previous plans to appeal to the Tennessee Supreme Court. The application for permission to appeal was denied.

State v. Wilkes, upon which Taylor based his plan to withdraw Petitioner's plea, concerned a defendant who pled guilty while attempting to reserve his right to appeal judgments of the trial court denying his motions to suppress certain evidence. Although neither the District Attorney, the defendant's attorney, nor the trial judge considered the defendant's questions dispositive, all three had informed the defendant that he could appeal the validity of the search warrant and obtain a trial excluding the evidence obtained if the appellate court sustained his contentions. Id. at 667. On appeal, this Court agreed with the defendant that it would be unfair under the circumstances to dismiss the appeal and affirm the judgments entered on the guilty pleas. Id. Accordingly, we remanded the case to the trial court for trial.

Wilkes arguably stands for the proposition that withdrawal of a plea is possible under certain limited circumstances when the question of law is not dispositive. As such, it supported Taylor's plan for correcting the result of his erroneous advice to Petitioner. Even though we do not comment on the validity of such an assertion, we concede that the holding in Wilkes at least justified Taylor's approaching Petitioner with the idea. What is most significant here is Petitioner's reaction to Taylor's plan. Petitioner declined to pursue a withdrawal of his plea, choosing instead to go forward with an appeal to our supreme court. In light of Petitioner's refusal to reassert his right to go to trial when faced with a plan to do so, Petitioner's argument that, but for counsel's error in assuring him the opportunity to appeal he would not have pled guilty, is suspect.

In Hill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) the United States Supreme Court applied the two-part Strickland standard to ineffective assistance of counsel claims arising out of the guilty plea process. The Court in Hill modified the prejudice requirement by requiring a defendant to show that there was a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Id. at 59. The Court noted that in many guilty plea cases the prejudice analysis would closely resemble the prejudice analysis applicable to jury convictions. Id. The Court explained that whether a certain error prejudiced the defendant by causing him to plead guilty instead of going to trial would in many cases depend on the likelihood that a correction of counsel's ineffective assistance would have changed the outcome of a trial. Id. As an illustration, the Court used a case in which the alleged error of counsel was a failure to discover potentially exculpatory evidence. The Court explained that whether a defendant was prejudiced by this failure would depend on the likelihood that discovery of the evidence would

-12-

have led counsel to change his recommendation as to the plea. Id. This inquiry would depend in large part on a prediction of whether the evidence would have changed the outcome of the trial. Id. The Court further noted that predictions as to the possible outcome of a trial should be made objectively. Id. at 59-60.

Here, although Taylor made an error, he nevertheless attempted to rectify the situation by placing Petitioner in the position he would have occupied if not for Taylor's mistake. To hold Taylor responsible for Petitioner's plight when Petitioner denied Taylor the opportunity to effect a plausible remedy by securing him a trial would be inappropriate. Although deficient performance on the part of counsel may have been proven, Petitioner has still failed to show a reasonable probability that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. Moreover, if Petitioner had proceeded to trial, his confession would have been admissible. As previously discussed, this Court already determined in dicta that both Petitioner's suppression and Rule 412 motions were properly denied. Consequently, failure to properly reserve the certified questions of law resulted in no prejudice to Petitioner and, thus, he is not entitled to relief on this issue.

## IV. Conclusion

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is AFFIRMED.

_____
THOMAS T. WOODALL, JUDGE

-13-